ORIGINAL

# In the United States Court of Federal Claims

No. 16-1622C
Filed: April 14, 2017

**FILED**

APR 1 4 2017

U.S. COURT OF
FEDERAL CLAIMS

* * * * * * * * * * * * * *
*
*
**MIGUEL A. GARCIA-GINES,**

         **Plaintiff,**

     v.

**UNITED STATES,**

         **Defendant.**

* * * * * * * * * * * * * *

**Military Disability Retirement Pay;
Motion to Dismiss; Subject Matter
Jurisdiction; Statute of Limitations;
Pro Se.**

---

**Miguel A. Garcia-Gines**, pro se, Ocala, Fla.

**Joshua E. Kurland**, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him was **Robert E. Kirschman, Jr.**, Director, Commercial Litigation Branch, and **Chad A. Readler**, Acting Assistant Attorney General, Civil Division, Department of Justice, Washington, D.C. Of counsel was **Maj. Patrick McGrath**, Litigation Attorney, Military Personnel Law Branch, United States Army Legal Services Agency.

**OPINION**

**HORN, J.**

**FINDINGS OF FACT**

Pro se plaintiff, Miguel Garcia-Gines, a former servicemember in the United States Army (Army) filed the above-captioned complaint in this court on December 7, 2016, seeking to change his discharge with severance pay to permanent disability retirement due to injuries sustained during active military service, to increase his disability percentage rating to equal 30 percent or more, and to recover monetary relief. Plaintiff seeks "monetary relief, and military medical retirement pay benefits against the United States Army for disabilities of a permanent nature in relation to medical injuries that were manifested and sustained during active military service." According to his complaint, plaintiff suffered "combat-related injuries (whiplash) to the front of the head, neck, and

7014 1200 0000 9093 7030

back" on January 11, 1991, which caused him to have "short term memory loss, cerebrospinal fluid leak, and periods of unconsciousness during the Persian Gulf War." Defendant has moved to dismiss plaintiff's complaint pursuant to Rule 12(b) of the Rules of the United States Court of Federal Claims (RCFC) for lack of jurisdiction.

In his complaint, plaintiff asserts that he "first joined the military on March 1, 1972, had two breaks in service, and served over 19 years of honorable military service in combination with the Air National Guard and Inactive Reserve." According to documents submitted to the court by both parties, it appears that plaintiff was active in military service from March 1, 1972 to February 22, 1974, and May 20, 1974 to May 19, 1977, and September 29, 1983 to May 3, 1995.[1] Plaintiff alleges that he suffered "a head injury to the front of the head" on January 11, 1991 during active military service when he was involved in a vehicular collision. According to plaintiff, he was traveling as a passenger in a "two and one-half ton truck" that was "rammed from the rear at a high rate of speed by a Saudi truck causing the plaintiff injuries not only to the head, neck, and back but also short term memory loss and leakage of spinal brain fluid through the nose." After the collision, plaintiff was diagnosed with degenerative joint disease of the lumbar spine. Approximately four years after the incident, on May 3, 1995, plaintiff was discharged from active service due to physical disability.

Prior to his discharge from the Army, plaintiff's medical condition was reviewed by a medical evaluation board (MEB) and by an informal physical evaluation board (PEB). On December 15, 1994, the MEB determined that plaintiff had "Degenerative joint disease of the lumbar spine," with an approximate date of origin in "Dec 1991." The MEB determined that plaintiff was unfit for continued military service. Plaintiff signed "DA FORM 3947," stating that he had been informed of the approved findings and recommendation of the MEB and that he agreed with the MEB's findings and recommendation. The MEB referred plaintiff to a PEB.

In a decision issued on January 3, 1995, an informal PEB described plaintiff's disabilities as follows:

> Degenerative joint disease of lumbar spine, progressive symptomology since motor vehicle accident Dec 1991 in Saudi Arabia.
>
> . . .
>
> Your functional limitations in maintaining the appropriate level of mobility and agility, caused by the physical impairments recorded above, make you unfit to perform the duties required of a SSG in your MOS of a Fire Support Forward Observer.

---

[1] In considering defendant's motion to dismiss, the court considered the administrative record, including all evidence relevant to the jurisdictional facts alleged in the complaint. See Banks v. United States, 741 F.3d 1268, 1277 (Fed. Cir. 2014) ("If a motion to dismiss for lack of subject matter jurisdiction . . . challenges the truth of the jurisdictional facts alleged in the complaint, the district court may consider relevant evidence in order to resolve the factual dispute.").

It is noted that your disability rating is less than 30 percent. For soldiers with a disability rating of less than 30 percent and with less than 20 years of service, AR 635-40 requires separation from service with severance pay.

The Board finds that your condition occurred in the line of duty, not due to your own misconduct.

Since you have service-connected medical conditions, you should contact a Veterans Administration counselor to learn about available benefits such as disability compensation, rehabilitation programs, insurance programs, employment assistance, home loans, and medical care benefits.

The informal PEB concluded that plaintiff was physically unfit and recommended a combined disability rating of 20 percent and that plaintiff's disposition be characterized as "Separation with severance pay if otherwise qualified."

The informal PEB also made the following "RECOMMENDED FINDING":

A. THE MEMBER'S RETIREMENT IS NOT BASED ON DISABILITY FROM INJURY OR DISEASE RECEIVED IN THE LINE OF DUTY AS A DIRECT RESULT OF ARMED CONFLICT OR CAUSED BY AN INSTRUMENTALITY OF WAR AND INCURRED IN LINE OF DUTY DURING A PERIOD OF WAR AS DEFINED BY LAW.
B. EVIDENCE OF RECORD REFLECTS THE INDIVIDUAL WAS NOT A MEMBER OR OBLIGATED TO BECOME A MEMBER OF AN ARMED FORCE OR RESERVE THEREOF. . . ON 24 SEPTEMBER 1975.
C. THE DISABILITY DID NOT RESULT FROM A COMBAT RELATED INJURY AS DEFINED IN 26 U.S.C. 104.

Plaintiff concurred with the informal PEB's findings and recommendations. On January 5, 1995, plaintiff signed a form indicating that he had been advised of the findings and recommendations of the informal PEB and had received a full explanation of the results of the findings and recommendations and legal rights that pertained to the informal PEB decision. Plaintiff signed a form stating "I CONCUR AND WAIVE A FORMAL HEARING OF MY CASE." The informal PEB findings and recommendations were approved by the Secretary of the Army on January 6, 1995.

As a result of the MEB and informal PEB proceedings, plaintiff was discharged from active duty service due to physical disability on May 3, 1995. Plaintiff's discharge is described on his DD Form 214, which states that his discharge was honorable and the reason for separation is "DISABILITY, SEVERANCE PAY." The DD Form 214 includes a description of plaintiff's record of service and explains that plaintiff's "Net Active Service This Period" was 11 years, 7 months, and 5 days. The DD Form 214 also explains that plaintiff's "Total Prior Inactive Service" was 2 months and 28 days.

Approximately 11 years after plaintiff was discharged from the Army due to his physical disability, on September 14, 2006, plaintiff filed a request with the Army Board for Correction of Military Records (ABCMR) to change his DD Form 214 from "Disability

3

Severance Pay to Permanent Retirement." Plaintiff also requested a change to his disability rating and asserted that "the percentage granted on the DA Form 199 is unfair and unjustifiable . . . ." In his request to the ABCMR, plaintiff acknowledged the lapse in time between his discharge and his request to change his military records: "I understand that a prolonged period of time has elapsed since the statement was issued, but I am pleading to you to uphold the name of justice due to a combat veteran who was dedicated to the mission first at all times." On April 12, 2007, the ABCMR notified plaintiff, in a letter, that his request to change his medical separation with severance pay to a medical disability retirement had been denied on April 5, 2007. In its denial decision, the ABCMR explained that "Title 10, U.S. Code, Section 1552(b), provides that applications for correction of military records must be filed within 3 years after discovery of the alleged error or injustice" and that the ABCMR can "excuse failure to file within the 3-year statute of limitations if the ABCMR determines that it would be in the interest of justice to do so." The ABCMR explained that plaintiff did not file his request for correction of his military records within the three-year statute of limitations and "that the evidence presented does not demonstrate the existence of a probable error or injustice." The ABCMR determined that "there is no evidence provided which shows that it would be in the interest of justice to excuse the applicant's failure to timely file this application within the 3-year statute of limitations prescribed by law." The April 12, 2007 letter that informed plaintiff of the ABCMR's denial decision explained, "[t]his decision in your case is final. You may request reconsideration of this decision within one year only if you can present new evidence or argument that was not considered by the Board when it denied your original application."[2]

---

[2] Separate from plaintiff's request to upgrade his retirement characterization on his DD Form 214, on January 7, 2009, plaintiff filed a second application for correction of his military records on the basis that his military personnel file did not accurately describe plaintiff's total time in service. Plaintiff asserted: "MY TOTAL MILITARY SERVICE WAS NOT ADDED CORRECTLY AT THE TIME OF DISCHARGE I WAS BEING SEPARATED MEDICALLY AND DUE TO HEAD TRAUMA AND VARIOUS OTHER INJURIES I WAS UNABLE TO GATHER ALL OF MY MILITARY DOCUMENTATION TO COMPUTE CORRECT DATA." On May 13, 2009, the ABCMR notified plaintiff that his request was granted to correct his total time in service on his DD Form 214, and the ABCMR noted that plaintiff did not file within the three-year statute of limitations. Notwithstanding the lateness of plaintiff's request, the ABCMR determined "it is in the interest of justice to excuse the applicant's failure to timely file" in order to correct his records with regard to "the computation of the applicant's total service." The ABCMR determined that, at the time he was discharged from the Army, plaintiff's DD Form 214 incorrectly reflected only two months and 28 days of total prior inactive service, when, in fact, plaintiff plaintiff's total prior inactive service was two years, seven months, and 21 days total. Accordingly, the ABCMR recommended that "all Department of the Army records of the individual concerned be corrected by amending item 12e on his DD Form 214 for the period ending 3 May 1995 to show 2 years, 7 months, and 21 days total prior inactive service." On August 18, 2009, the Army notified plaintiff that his records had been corrected in accordance with the ABCMR decision.

On January 15, 2010, plaintiff filed another request to the ABCMR for the correction of his military records seeking to change his discharge characterization on his DD Form 214 "to read ('Retirement, Disability Permanent'['] . . . with the appropriate medical retirement percentage. . . ." The ABCMR considered plaintiff's request as an untimely request for reconsideration of the ABCMR's April 5, 2007 decision denying plaintiff's similar request on September 14, 2006. On June 9, 2010, the ABCMR notified plaintiff that "[t]he staff of the ABCMR reviewed your request and determined that it was a request for reconsideration and that your request for reconsideration was not received within one year of the ABCMR's original decision" on April 5, 2007. The June 9, 2010 letter to plaintiff stated that "[t]he ABCMR will not consider any further requests for reconsideration of this matter. However, you have the option to seek relief in a court of appropriate jurisdiction."

Shortly after the ABCMR's letter to plaintiff on June 9, 2010, plaintiff's spouse sent a letter on June 17, 2010 also seeking reconsideration of plaintiff's case "due [to] extenuating circumstances that caused a lapse in time for the filing" of plaintiff's request to correct his military records. The ABCMR responded to plaintiff's wife in a letter on December 13, 2010, which explained that the ABCMR's decision on June 9, 2010 "was the final administrative action taken by the Secretary of the Army. There is no further action contemplated by the ABCMR since he [plaintiff] is not eligible for further reconsideration by this Board." In this letter, the ABCMR indicated, again, that it would not consider any further requests for reconsideration and that plaintiff had the option to seek relief in a court of appropriate jurisdiction.

On September 9, 2014, plaintiff submitted another request to the ABCMR seeking to change his discharge to a retirement due to permanent disability and to increase his disability percentage rating. In response, the ABCMR sent plaintiff a letter on September 25, 2014 explaining that plaintiff's request was considered by the ABCMR in April of 2007 and that plaintiff had previously requested reconsideration of the April 2007 decision in 2010. Similar to the ABCMR's letters to plaintiff on June 9, 2010 and December 13, 2010, the September 25, 2014 letter to plaintiff explained that the decision denying reconsideration of plaintiff's request was the final administrative action and that no further action would be contemplated by the ABCMR. The September 25, 2014 letter stated that the ABCMR would not consider further requests for reconsideration and that plaintiff had the option to seek relief in a court of appropriate jurisdiction.

Approximately two years after the ABCMR's September 25, 2014 letter, and approximately 20 years after his discharge from the Army, plaintiff filed his complaint in this court seeking "compensatory damages in the sum of $238,724.90 and additional cost-of living adjustments increases," as well as an "[i]ncrease in medical percentages to equal 30 percent or more and military retirement benefits in accordance with Veterans Affairs Schedule for Rating Disabilities and related precepts, laws, and army regulations." In this court, plaintiff also requests that his "final separation document DD Form 214 is corrected to read: Type of Separation **Retirement** and Narrative Reason for Separation: **Disability**." (emphasis in original). In his complaint, plaintiff asserts that "Military and Physical Evaluation Board proceedings at time of discharge failed to abide by Army Regulations by not correctly adding his total time in service and by stating on his Physical Evaluation Board proceedings that he was not in the military before September 24, 1975,

5

and combat-related injuries were not incurred in line of duty during a time of national emergency after September 14, 1978." Plaintiff also alleges that his "injuries were 'passed over' from the Medical Evaluation Board and Physical Evaluation Board Proceedings because medical personnel only concentrated their medical efforts and analysis on the plaintiff's back injury." According to plaintiff, at the time he was discharged from the Army, he "did not receive any type of direct legal counseling and advice from the Chain-of-command and was in poor physical and mental condition." Plaintiff asserts that "[t]he last final administrative action with the Army Review Board was on September 25, 2014," when, as noted above, the ABCMR stated that it would not consider any future request from plaintiff and that plaintiff had the option of seeking relief in court.

        Defendant has moved to dismiss plaintiff's complaint pursuant to RCFC 12(b)(1) for lack of subject matter jurisdiction because plaintiff's claims fall outside the six-year statute of limitations set forth in 28 U.S.C. § 2501 (2012), and, therefore, are time-barred. Defendant points out that the applicable statute of limitations is jurisdictional and may not be waived because it implicates the waiver of sovereign immunity. Defendant argues that, in the context of claims seeking disability retirement pay, the claim must be filed in this court within six years of a plaintiff's discharge when, at the time of discharge, an appropriate board has already heard and denied plaintiff's claim for disability. Plaintiff filed an opposition to defendant's motion to dismiss that reiterates the allegations in plaintiff's complaint and argues that his claims fall within the six-year statute of limitations because "his claim did not come into existence until the Army Correction Boards and Secretary of the Army rendered its final administrative action on September 25, 2014."

## DISCUSSION

        The court recognizes that plaintiff is proceeding pro se, without the assistance of counsel. When determining whether a complaint filed by a pro se plaintiff is sufficient to invoke review by a court, pro se plaintiffs are entitled to liberal construction of their pleadings. See Haines v. Kerner, 404 U.S. 519, 520-21 (requiring that allegations contained in a pro se complaint be held to "less stringent standards than formal pleadings drafted by lawyers"), reh'g denied, 405 U.S. 948 (1972); see also Erickson v. Pardus, 551 U.S. 89, 94 (2007); Hughes v. Rowe, 449 U.S. 5, 9-10 (1980); Estelle v. Gamble, 429 U.S. 97, 106 (1976), reh'g denied, 429 U.S. 1066 (1977); Matthews v. United States, 750 F.3d 1320, 1322 (Fed. Cir. 2014); Diamond v. United States, 115 Fed. Cl. 516, 524, aff'd, 603 F. App'x 947 (Fed. Cir.), cert. denied 135 S. Ct. 1909 (2015). "However, "'[t]here is no duty on the part of the trial court to create a claim which [the plaintiff] has not spelled out in his [or her] pleading."'" Lengen v. United States, 100 Fed. Cl. 317, 328 (2011) (alterations in original) (quoting Scogin v. United States, 33 Fed. Cl. 285, 293 (1995) (quoting Clark v. Nat'l Travelers Life Ins. Co., 518 F.2d 1167, 1169 (6th Cir. 1975))); see also Bussie v. United States, 96 Fed. Cl. 89, 94, aff'd, 443 F. App'x 542 (Fed. Cir. 2011); Minehan v. United States, 75 Fed. Cl. 249, 253 (2007). "While a pro se plaintiff is held to a less stringent standard than that of a plaintiff represented by an attorney, the pro se plaintiff, nevertheless, bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence." Riles v. United States, 93 Fed. Cl. 163, 165 (2010) (citing Hughes v. Rowe, 449 U.S. at 9 and Taylor v. United States, 303 F.3d 1357, 1359 (Fed. Cir.) ("Plaintiff bears the burden of showing jurisdiction by a preponderance of the evidence."), reh'g and reh'g en banc denied (Fed. Cir. 2002)); see also Shelkofsky v.

6

United States, 119 Fed. Cl. 133, 139 (2014) ("[W]hile the court may excuse ambiguities in a pro se plaintiff's complaint, the court 'does not excuse [a complaint's] failures.'" (quoting Henke v. United States, 60 F.3d 795, 799 (Fed. Cir. 1995)); Harris v. United States, 113 Fed. Cl. 290, 292 (2013) ("Although plaintiff's pleadings are held to a less stringent standard, such leniency 'with respect to mere formalities does not relieve the burden to meet jurisdictional requirements.'" (quoting Minehan v. United States, 75 Fed. Cl. at 253)).

In Mr. Garcia-Gines' case, as noted above, defendant has moved to dismiss plaintiff's complaint pursuant to RCFC 12(b)(1) and argues that this court does not have subject matter jurisdiction to consider plaintiff's complaint because it is time-barred. Plaintiff, however, alleges that this court has jurisdiction to consider his claim pursuant to "28 U.S.C. § 1491(a)(1)(2) (2006), 10 U.S.C. § 1201 (a)(b) (2006), and 37 U.S.C. §204(a)-(d) (2006)."

In considering defendant's motion to dismiss plaintiff's complaint for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1), the court presumes all undisputed factual allegations to be true and construes all reasonable inferences in plaintiff's favor. See Miller v. United States, 119 Fed. Cl. 717, 724 (2015). As the plaintiff, however, Mr. Garcia-Gines has the burden of proving that this court has subject matter jurisdiction and that his claim is timely. See Banks v. United States, 741 F.3d at 1277 ("In such cases, the plaintiff has the burden of proving subject matter jurisdiction by a preponderance of the evidence.").

It is well established that "'subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived.'" Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006) (quoting United States v. Cotton, 535 U.S. 625, 630 (2002)). "[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press." Henderson ex rel. Henderson v. Shinseki, 562 U.S. 428, 434 (2011); see also Gonzalez v. Thaler, 132 S. Ct. 641, 648 (2012) ("When a requirement goes to subject-matter jurisdiction, courts are obligated to consider sua sponte issues that the parties have disclaimed or have not presented."); Hertz Corp. v. Friend, 559 U.S. 77, 94 (2010) ("Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." (citing Arbaugh v. Y & H Corp., 546 U.S. at 514)); Special Devices, Inc. v. OEA, Inc., 269 F.3d 1340, 1342 (Fed. Cir. 2001) ("[A] court has a duty to inquire into its jurisdiction to hear and decide a case." (citing Johannsen v. Pay Less Drug Stores N.W., Inc., 918 F.2d 160, 161 (Fed. Cir. 1990)); View Eng'g, Inc. v. Robotic Vision Sys., Inc., 115 F.3d 962, 963 (Fed. Cir. 1997) ("[C]ourts must always look to their jurisdiction, whether the parties raise the issue or not."). "Objections to a tribunal's jurisdiction can be raised at any time, even by a party that once conceded the tribunal's subject-matter jurisdiction over the controversy." Sebelius v. Auburn Reg'l Med. Ctr., 133 S. Ct. 817, 824 (2013); see also Arbaugh v. Y & H Corp., 546 U.S. at 506 ("The objection that a federal court lacks subject-matter jurisdiction . . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment."); Cent. Pines Land Co., L.L.C. v. United States, 697 F.3d 1360, 1364 n.1 (Fed. Cir. 2012) ("An objection to a court's subject matter jurisdiction can be raised by any party or the

court at any stage of litigation, including after trial and the entry of judgment." (citing Arbaugh v. Y & H Corp., 546 U.S. at 506–07)); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1346 (Fed. Cir. 2008) ("[A]ny party may challenge, or the court may raise sua sponte, subject matter jurisdiction at any time." (citing Arbaugh v. Y & H Corp., 546 U.S. at 506; Folden v. United States, 379 F.3d 1344, 1354 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2004), cert. denied, 545 U.S. 1127 (2005); and Fanning, Phillips & Molnar v. West, 160 F.3d 717, 720 (Fed. Cir. 1998))); Pikulin v. United States, 97 Fed. Cl. 71, 76, appeal dismissed, 425 F. App'x 902 (Fed. Cir. 2011). In fact, "[s]ubject matter jurisdiction is an inquiry that this court must raise sua sponte, even where . . . neither party has raised this issue." Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings, 370 F.3d 1354, 1369 (Fed. Cir.) (citing Textile Prods., Inc. v. Mead Corp., 134 F.3d 1481, 1485 (Fed. Cir.), reh'g denied and en banc suggestion declined (Fed. Cir.), cert. denied, 525 U.S. 826 (1998)), reh'g and reh'g en banc denied (Fed. Cir. 2004), cert. granted in part sub. nom Lab. Corp. of Am. Holdings v. Metabolite Labs., Inc., 546 U.S. 975 (2005), cert. dismissed as improvidently granted, 548 U.S. 124 (2006); see also Avid Identification Sys., Inc. v. Crystal Import Corp., 603 F.3d 967, 971 (Fed. Cir.) ("This court must always determine for itself whether it has jurisdiction to hear the case before it, even when the parties do not raise or contest the issue."), reh'g and reh'g en banc denied, 614 F.3d 1330 (Fed. Cir. 2010), cert. denied, 131 S. Ct. 909 (2011).

"Determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir.) (citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1 (1983)), reh'g denied (Fed. Cir. 1997); see also Klamath Tribe Claims Comm. v. United States, 97 Fed. Cl. 203, 208 (2011); Gonzalez-McCaulley Inv. Corp., Inc. v. United States, 93 Fed. Cl. 710, 713 (2010). A plaintiff need only state in the complaint "a short and plain statement of the grounds for the court's jurisdiction," and "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(1), (2) (2016); Fed. R. Civ. P. 8(a)(1), (2) (2016); see also Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–57, 570 (2007)). However, "[c]onclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." Bradley v. Chiron Corp., 136 F.3d 1317, 1322 (Fed. Cir. 1998); see also McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1363 n.9 (Fed. Cir. 2007) (Dyk, J., concurring in part, dissenting in part) (quoting C. Wright and A. Miller, Federal Practice and Procedure § 1286 (3d ed. 2004)). "A plaintiff's factual allegations must 'raise a right to relief above the speculative level' and cross 'the line from conceivable to plausible.'" Three S Consulting v. United States, 104 Fed. Cl. 510, 523 (2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555), aff'd, 562 F. App'x 964 (Fed. Cir.), reh'g denied (Fed. Cir. 2014). As stated in Ashcroft v. Iqbal, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' 550 U.S. at 555. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555).

The Tucker Act grants jurisdiction to this court as follows:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1) (2012). As interpreted by the United States Supreme Court, the Tucker Act waives sovereign immunity to allow jurisdiction over claims against the United States (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government, or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. See United States v. Navajo Nation, 556 U.S. 287, 289–90 (2009); United States v. Mitchell, 463 U.S. 206, 216 (1983); see also Greenlee Cnty., Ariz. v. United States, 487 F.3d 871, 875 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2007), cert. denied, 552 U.S. 1142 (2008); Palmer v. United States, 168 F.3d 1310, 1314 (Fed. Cir. 1999).

"Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act. The claim must be one for money damages against the United States . . . ." United States v. Mitchell, 463 U.S. at 216; see also United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003); Smith v. United States, 709 F.3d 1114, 1116 (Fed. Cir.), cert. denied, 134 S. Ct. 259 (2013); RadioShack Corp. v. United States, 566 F.3d 1358, 1360 (Fed. Cir. 2009); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d at 1343 ("[P]laintiff must . . . identify a substantive source of law that creates the right to recovery of money damages against the United States."); Golden v. United States, 118 Fed. Cl. 764, 768 (2014). In Ontario Power Generation, Inc. v. United States, the United States Court of Appeals for the Federal Circuit identified three types of monetary claims for which jurisdiction is lodged in the United States Court of Federal Claims. The court wrote:

> The underlying monetary claims are of three types. . . . First, claims alleging the existence of a contract between the plaintiff and the government fall within the Tucker Act's waiver. . . . Second, the Tucker Act's waiver encompasses claims where "the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum." Eastport S.S. [Corp. v. United States, 178 Ct. Cl. 599, 605–06,] 372 F.2d [1002,] 1007-08 [(1967)] (describing illegal exaction claims as claims "in which 'the Government has the citizen's money in its pocket'" (quoting Clapp v. United States, 127 Ct. Cl. 505, 117 F. Supp. 576, 580 (1954)) . . . . Third, the Court of Federal Claims has jurisdiction over those claims where "money has not been paid but the plaintiff asserts that he is nevertheless entitled to a payment from the treasury." Eastport S.S., 372 F.2d at 1007. Claims in this third category, where no payment has been made to the

government, either directly or in effect, require that the "particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum." Id.; see also [United States v. ]Testan, 424 U.S. [392,] 401-02 [1976] ("Where the United States is the defendant and the plaintiff is not suing for money improperly exacted or retained, the basis of the federal claim-whether it be the Constitution, a statute, or a regulation-does not create a cause of action for money damages unless, as the Court of Claims has stated, that basis 'in itself . . . can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" (quoting Eastport S.S., 372 F.2d at 1009)). This category is commonly referred to as claims brought under a "money-mandating" statute.

Ontario Power Generation, Inc. v. United States, 369 F.3d 1298, 1301 (Fed. Cir. 2004); see also Twp. of Saddle Brook v. United States, 104 Fed. Cl. 101, 106 (2012).

To prove that a statute or regulation is money-mandating, a plaintiff must demonstrate that an independent source of substantive law relied upon "'can fairly be interpreted as mandating compensation by the Federal Government.'" United States v. Navajo Nation, 556 U.S. at 290 (quoting United States v. Testan, 424 U.S. 392, 400 (1976)); see also United States v. White Mountain Apache Tribe, 537 U.S. at 472; United States v. Mitchell, 463 U.S. at 217; Blueport Co., LLC v. United States, 533 F.3d 1374, 1383 (Fed. Cir. 2008), cert. denied, 555 U.S. 1153 (2009). The source of law granting monetary relief must be distinct from the Tucker Act itself. See United States v. Navajo Nation, 556 U.S. at 290 (The Tucker Act does not create "substantive rights; [it is simply a] jurisdictional provision[] that operate[s] to waive sovereign immunity for claims premised on other sources of law (e.g., statutes or contracts)."). "'If the statute is not money-mandating, the Court of Federal Claims lacks jurisdiction, and the dismissal should be for lack of subject matter jurisdiction.'" Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1308 (Fed. Cir. 2008) (quoting Greenlee Cnty., Ariz. v. United States, 487 F.3d at 876); Fisher v. United States, 402 F.3d 1167, 1173 (Fed. Cir. 2005) (The absence of a money-mandating source is "fatal to the court's jurisdiction under the Tucker Act."); Peoples v. United States, 87 Fed. Cl. 553, 565–66 (2009).

Although the Tucker Act waives federal sovereign immunity and grants this court jurisdiction to hear monetary claims against the government, this court's jurisdiction is expressly limited by 28 U.S.C. § 2501 (2012), which prescribes a six-year statute of limitations for claims arising under the Tucker Act's waiver of sovereign immunity.

According to 28 U.S.C. § 2501:

Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues. . . . A petition on the claim of a person under legal disability or beyond the seas at the time the claim accrues may be filed within three years after the disability ceases.

Id. "The six-year statute of limitations set forth in section 2501 is a jurisdictional requirement for a suit in the Court of Federal Claims." John R. Sand & Gravel Co. v. United States, 457 F.3d 1345, 1354 (Fed. Cir.), reh'g en banc denied (Fed. Cir. 2006), aff'd, 552 U.S. 130 (2008); Schnell v. United States, 115 Fed. Cl. 102, 104-05 (2014). The United States Court of Appeals for the Federal Circuit has indicated that a claim accrues "'"when all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for his money."'" San Carlos Apache Tribe v. United States, 639 F.3d 1346, 1358-59 (Fed. Cir.) (quoting Samish Indian Nation v. United States, 419 F.3d 1355, 1369 (Fed. Cir. 2005) (quoting Martinez v. United States, 333 F.3d 1295, 1303 (Fed. Cir. 2003), cert. denied, 540 U.S. 1177 (2004))), reh'g en banc denied (Fed. Cir. 2011); see also FloorPro, Inc. v. United States, 680 F.3d 1377, 1381 (Fed. Cir. 2012); Martinez v. United States, 333 F.3d at 1303) ("A cause of action cognizable in a Tucker Act suit accrues as soon as all events have occurred that are necessary to enable the plaintiff to bring suit, i.e., when 'all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for his money.'" (quoting Nager Elec. Co. v. United States, 177 Ct. Cl. 234, 240, 368 F.2d 847, 851 (1966), motion denied, 184 Ct. Cl. 390, 396 F.2d 977 (1968)); Mildenberger v. United States, 643 F.3d 938, 944-45 (Fed. Cir. 2011); Hopland Band of Pomo Indians v. United States, 855 F.2d 1573, 1577 (Fed. Cir. 1988); see also Eden Isle Marina, Inc. v. United States, 113 Fed. Cl. 372, 481 (2013); Brizuela v. United States, 103 Fed. Cl. 635, 639, aff'd, 492 F. App'x 97 (Fed. Cir. 2012), cert. denied, 133 S. Ct. 1645 (2013); see also Levy v. United States, 83 Fed. Cl. 67, 73, 79 (2008) (dismissing a claim for military reserve retirement benefits because suits against the United States are subject to a six-year statute of limitations and the claim was filed outside the allotted timeframe); Barney v. United States, 57 Fed. Cl. 76, 83, 86 (2003) (dismissing former Airman's claims for wrongful discharge/unpaid wages and disability retirement because they were time-barred by the six-year statute of limitations). A Judge of the United States Court of Federal Claims has noted that:

> It is well-established that a claim accrues under section 2501 "when 'all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for his money.'" Martinez v. United States, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (en banc), cert. denied, 540 U.S. 1177 (2004) (quoting Nager Elec. Co. v. United States, 368 F.2d 847, 851 (Ct. Cl. 1966)); see also Samish [Indian Nation v. United States], 419 F.3d [1355,] 1369 [(2005)]. Because, as noted, this requirement is jurisdictional, plaintiff bears the burden of demonstrating that its claims were timely. See Alder Terrace, Inc. v. United States, 161 F.3d 1372, 1377 (Fed. Cir. 1998); Entines v. United States, 39 Fed. Cl. 673, 678 (1997), aff'd, 185 F.3d 881 (Fed. Cir.), cert. denied, 526 U.S. 1117 (1999); see also John R. Sand & Gravel Co. v. United States, 457 F.3d 1345, 1362 (Fed. Cir. 2006) (Newman, J., dissenting); Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988).

Parkwood Assocs. Ltd. P'ship v. United States, 97 Fed. Cl. 809, 813-14 (2011), aff'd, 465 F. App'x 952 (Fed. Cir. 2012); see also Klamath Tribe Claims Comm. v. United States, 97

Fed. Cl. 203, 209 (2011) (citing Alder Terrace, Inc. v. United States, 161 F.3d 1372, 1377 (Fed. Cir. 1998)). Accrual of a claim is "'determined under an objective standard'" and plaintiff does not have to possess actual knowledge of all the relevant facts in order for a cause of action to accrue. FloorPro, Inc. v. United States, 680 F.3d at 1381 (quoting Fallini v. United States, 56 F.3d 1378, 1380 (Fed. Cir. 1995), cert. denied, 517 U.S. 1243 (1996)).

Defendant argues that plaintiff's causes of action for disability retirement pay, compensatory damages, and other monetary relief accrued upon his discharge from the Army on May 3, 1995, because, at that time, the PEB had already determined that plaintiff's medical conditions made him unfit for continued military service and had recommended that plaintiff be separated, with severance pay, based on a 20 percent disability rating. According to defendant, because plaintiff's complaint was not filed until approximately 20 years after plaintiff's discharge from the Army, it is time-barred. In opposition, plaintiff argues that his claim is not time-barred because it was filed within six years of the ABCMR's decision on September 25, 2014.

"The generally accepted rule is that claims of entitlement to disability retirement pay do not accrue until the appropriate board either finally denies such a claim or refuses to hear it." Real v. United States, 906 F.2d 1557, 1560 (1990) (citing Friedman v. United States, 159 Ct. Cl. 1 (1962), cert. denied, 373 U.S. 932, (1963)). "The decision by the first statutorily authorized board which hears or refuses to hear the claim is the triggering event." Real v. United States, 906 F.2d at 1560. As an exception to this general rule, however, and as is pertinent to this case, a claim for disability retirement pay accrues at the time a service member is discharged if, at the time of discharge, the service member has already requested review by an appropriate board and the request was denied, or if the board heard the service member's claims and denied them. See Chambers v. United States, 417 F.3d 1218, 1225 (2005) (citing Real v. United States, 906 F.2d at 1560). When this occurs, "[a] subsequent petition to the corrections board does not toll the running of the limitations period . . . , nor does a new claim accrue upon denial of the petition by the corrections board . . . ." Real v. United States, 906 F.2d at 1560 (Fed. Cir. 1990) (citing Friedman v. United States, 159 Ct. Cl. at 14-15, 25-29).

In the present case, it is undisputed that, following the MEB recommendation, plaintiff received a hearing regarding his alleged disability before an informal PEB prior to his discharge on May 3, 1995, and waived a formal PEB hearing. As explained above, the informal PEB considered plaintiff's condition in January 1995 and recommended that he be separated from the Army with severance pay and a 20% disability rating. Plaintiff concurred with the PEB's recommendation and waived a formal hearing prior to his discharge from the Army. Thus, at the time of his discharge from the Army, plaintiff's claim for disability had been considered, and denied, by an appropriate board. According to the United States Court of Appeals for the Federal Circuit, when a plaintiff waives a formal PEB hearing, a decision by an informal PEB is sufficient to trigger the running of the statute of limitations on a disability retirement claim. See Gant v. United States, 417 F.3d 1328, 1329-30 (Fed. Cir. 2005) (finding that plaintiff's knowing and voluntary waiver of a formal PEB hearing through acceptance of an informal PEB's conclusions was sufficient to cause a claim to accrue); Schmidt v. United States, 89 Fed. Cl. 111, 120-21 (2009)

("An 'informal' CPEB [Central Physical Evaluation Board] decision is sufficient to start the running of the statute of limitations."); <u>Fuller v. United States</u>, 14 Cl. Ct. 542, 544 (1988) ("The PEB is a proper and competent tribunal whose decision is adequate to trigger the running of the statute of limitations."); <u>Abatemarco v. United States</u>, 226 Ct. Cl. 708, 710 (1981) ("Plaintiff's cause of action accrued in May 1972 because he had then demanded but been refused a Physical Evaluation Board, and was released without disability retirement pay."). Although plaintiff relies on the ABCMR's September 25, 2014 decision to argue that his claim is not time-barred, plaintiff's claim for disability retirement pay accrued upon the date of his discharge from the Army on May 3, 1995 because, prior to his discharge, plaintiff's disability claim had been considered by the informal PEB, and plaintiff waived a formal PEB hearing. <u>See</u> <u>Chambers v. United States</u>, 417 F.3d at 1225 (citing <u>Real v. United States</u>, 906 F.2d at 1560). Therefore, the statute of limitations for plaintiff's military disability retirement pay expired on May 3, 2001, six years after the date of his discharge, and, as a result, plaintiff's claim for disability retirement pay in the above-captioned case filed on December 7, 2016 is untimely. The court, therefore, concludes that plaintiff's complaint was filed more than fifteen years after the expiration of the statute of limitations, and, thus, plaintiff's claims are time-barred.

## CONCLUSION

For the reasons stated above, this court lacks jurisdiction to hear plaintiff's claims. Defendant's motion to dismiss is **GRANTED**. Plaintiff's complaint is **DISMISSED**. The clerk's office shall enter **JUDGMENT** consistent with this opinion.

**IT IS SO ORDERED.**

**MARIAN BLANK HORN**
**Judge**